IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALICIA SMITH )
)
        Plaintiff, )
)
v. ) No. 04 C 1705
)
MOLLY MAID, INC., a Michigan )
corporation, )
)
        Defendant. )
)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alicia Smith has been interested in obtaining a franchise with defendant Molly Maid, Inc. ("Molly Maid") since at least 2001. In September 2001, Ms. Smith sent Molly Maid a completed "Getting to Know You" form, which included personal and financial information. Ms. Smith did not list her outstanding mortgage loan on that form. In October 2001, Molly Maid obtained Ms. Smith's credit report, which did list the mortgage. In November 2001, Ms. Smith attended "Discovery Day," an event sponsored by Molly Maid to allow potential franchisees to learn more about the business. For personal reasons, Ms. Smith did nothing further to pursue the possibility of obtaining a franchise for approximately a year after the Discovery Day.

On November 19, 2002, Ms. Smith submitted a franchise application to Molly Maid, on which she disclosed (among other items) the mortgage loan. On December 9, Gregory A. Longe, Molly Maid's president, and Linda Popovich-Davis, head of Molly Maid's

franchise department, approved an official request to grant Ms. Smith a franchise agreement. On December 11, Molly Maid sent Ms. Smith a letter, stating that "We're very pleased to award you a Molly Maid franchise business" and detailing the next steps to be taken by Ms. Smith. Those steps included executing the Franchise Agreement and returning it to Molly Maid, along with a $6,900 Franchise Fee, a $40,634 Territory Fee, and an $8,000 Initial Package Fee. Ms. Smith executed the Agreement, and returned it to Molly Maid along with a check for $6,900. Ms. Smith's projected territory and the corresponding Territory Fee were reduced by agreement, and on January 9, 2003, Ms. Smith executed promissory notes to cover the Territory Fee and Initial Package Fee. The promissory notes, in the amounts of $15,000 and $21,415, were to become due when Ms. Smith made arrangements to attend Molly Maid's "Right Start" training or in the first month following that training, respectively.

During the period from January 2003 until March 14, 2003, Ms. Smith and Gae Miller, a representative from Molly Maid, worked to create a business plan that Ms. Smith could use in seeking financing to cover her promissory notes and initial operating expenses. On March 14, Ms. Smith met with Ms. Miller, Mr. Longe, and Stephanie Zikakis, a Molly Maid vice president. In that meeting, Mr. Longe informed Ms. Smith that her Molly Maid franchise

was terminated.[1] Ms. Miller had concerns about Ms. Smith's ability to pursue a Master's degree and a new franchise at the same time. Molly Maid admits it was aware of Ms. Smith's graduate school plans from the beginning of the process. Mr. Longe was concerned about Ms. Smith's apparent level of liquidity, and based his decision solely on that concern. On April 8, Molly Maid sent Ms. Smith a letter which stated, in part, that "Molly Maid and Franchise Owner" had agreed to terminate the Franchise Agreement.

On April 15, Molly Maid sent Ms. Smith a letter stating that her application was denied "for financial reasons" and that Molly Maid would not have proceeded with the application if Ms. Smith had disclosed her mortgage on her "personal balance sheet." Molly Maid included a check to Ms. Smith for $6,900 with that letter. On May 15, Molly Maid wrote to Ms. Smith, stating that there was no Franchise Agreement between them and that Ms. Smith's failure to disclose her mortgage on the form filed in September 2001 had caused the delay in evaluating her application and the eventual denial of that application.

In her complaint, Ms. Smith alleges that Molly Maid, through its actions, has discriminated against her on the basis of her race in violation of 42 U.S.C. § 1981 (Count I); has violated the Illinois Franchise Disclosure Act, 815 Ill. Comp. Stat. 705/1 et

---

[1] Molly Maid contends that Ms. Smith was never granted a franchise, and that at this meeting she was instead informed that her application was denied.

*seq.* (Count II); and has breached the contract between them (Count III). Molly Maid moves for summary judgment on all three counts. I deny that motion, for the reasons stated below.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Count I alleges that Molly Maid has discriminated against Ms. Smith on the basis of her race, in violation of 42 U.S.C. § 1981, by terminating her franchise. Ms. Smith has no direct evidence of racial animus on the part of Molly Maid; she must therefore proceed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that approach, Ms. Smith must show that (1) she is a member of a racial minority, (2) she was a qualified applicant for a Molly Maid franchise, (3) she was rejected as an applicant, and (4) after the rejection, Molly Maid continued to seek applicants. *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 571 (7th Cir. 1989). If she does so successfully, Molly Maid may then raise its legitimate reasons for taking the action it did, and Ms. Smith may attempt to show that

4

those reasons are merely pretextual. *McDonnell Douglas*, 411 U.S. at 804.

Molly Maid argues that Ms. Smith cannot show that she was a qualified applicant, because she lacked the financing necessary to purchase a franchise and begin operations. Molly Maid also states that those reasons were its legitimate reasons for rejecting her application. Molly Maid states that Ms. Smith was unable to obtain the financing in the form of loans, that she needed to make good on her promissory notes and otherwise begin operations. Molly Maid also argues that Ms. Smith never made a payment on her promissory notes. Ms. Smith states, however, that she was in the process of securing financing when Molly Maid terminated the franchise process. Further, Molly Maid admits that no payment was due on the first promissory note until Ms. Smith arranged to begin its franchisee-training "Right Start" program, and that no payment was due on the second promissory note until one month after Ms. Smith's completion of that training. Neither milestone had been reached before Molly Maid pulled the plug. A question remains for the jury as to whether Ms. Smith was a qualified applicant for a Molly Maid franchise.

Molly Maid also contends that its reasons for terminating the franchise process were not pretextual. However, its reasons as stated on summary judgment for that termination - Ms. Smith's inability to obtain financing and failure to make payments on her

5

promissory notes – are not the same as the reasons given to Ms. Smith at earlier times. At the time of the April 2003 meeting, Mr. Longe testifies that he was concerned with Ms. Smith's liquidity, and Ms. Miller testifies that she was concerned about Ms. Smith's graduate studies. In the letters of April and May 2003, Molly Maid focused on Ms. Miller's failure to disclose her mortgage on the September 2001 form, although that mortgage was disclosed on her October 2001 credit report and the form she filed in November 2002. With the exception of Ms. Miller's concerns, these reasons all focus on Ms. Smith's financial status, but they are not all the same reason. Molly Maid's shifting reasons for terminating the franchise process could lead a reasonable jury to conclude that the reason now given is, in fact, pretextual.

Counts II and III allege, respectively, that Molly Maid terminated Ms. Smith's Franchise Agreement in violation of Illinois law and of the Agreement itself. Molly Maid argues that it had never granted a franchise to Ms. Smith, a necessary predicate for both counts. However, sufficient evidence exists from which a reasonable jury could conclude that Ms. Smith had been granted a franchise. The December 11, 2002 letter stated that Molly Maid was "very pleased to award you a Molly Maid franchise." Ms. Smith had executed and returned a Franchise Agreement, along with a check for her Franchise Fee. Ms. Smith had also executed promissory notes for the other fees associated with a new franchise (apparently a

6

not-uncommon business practice for Molly Maid), and was working with Ms. Miller to develop a business plan. After the April 2003 meeting, Molly Maid sent Ms. Smith a letter in which she was described as a "Franchise Owner."

Molly Maid also argues that even if a franchise had been granted to Ms. Smith, it had good cause to terminate the Agreement, as Ms. Smith was unable to obtain financing and did not make payments on her promissory notes. A question of fact for the jury remains on this argument, for the same reasons as stated above. Molly Maid's motion for summary judgment is denied.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated:    May 31, 2005